UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESTHER B. GRANT,<br><br>           Plaintiff,<br>    v.<br><br>JOHN E. POTTER, POSTMASTER GENERAL, USPS,<br><br>           Defendant. | Case No.: C 05-04983 PVT<br><br>**ORDER GRANTING DEFENDANT JOHN E. POTTER'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendant John E. Potter moves for summary judgment. He is the Postmaster General for the United States Post Office. Plaintiff Esther B. Grant proceeding *pro se* opposes the motion. On August 19, 2008, the parties appeared for hearing. Having reviewed the papers and considered the arguments of the parties and for the reasons set forth below, defendant Potter's motion is granted.[1]

## BACKGROUND

Esther Belle Grant is a woman born in 1939. She was formerly employed by the United States Postal Service and has alleged discrimination on the basis of her gender and age which she states occurred on the following three occasions: (1) denial of window training; (2) termination of her employment during the ninety-day probation period at the Los Gatos Post Office; and (3) breach of a settlement agreement with her that had been reached by the parties in an effort to resolve the

---

[1] The holding of this court is limited to the facts and particular circumstances underlying the present motion.

prior two issues.[2] Also, plaintiff has alleged retaliation by the post office.[3]

**A.     Window Training**

The United States Post Office uses a register to identify potential career employees for available positions. Grant Declaration (Third Correction to Oath)("Grant Decl."), Florencia Aceituno Deposition at 11:2-5. ("Aceituno Depo."). Grant Decl.(3rd Correction to Oath),[4] Exh. 6. Applicants are ranked on a register according to their test scores. EEO Hearing, Kathie Faupel Testimony ("Faupel Testimony") at 300:12-25. "Call in" notices are sent to the top three applicants on the register.[5] *Id.* Grant Decl.(3rd Correction to Oath), Exhs. 12-14, 22. "If more than one position is to be filled, after the first selection is made, there is a new top three from which the second selection can be made." Supplemental Declaration of Kathie Faupel ("Supp. Faupel Decl."), ¶ 3. A "call in" notice expressly states that: "[t]his notice is not an offer of employment." Declaration of Claire T. Cormier ("Cormier Decl."), ¶ 4, Exh. 2. Following an interview, an applicant might be given additional tests, including a medical or driving exam, before being offered a position of employment with the post office. Faupel Testimony at 301:3-19. The hiring process normally lasts 4-6 weeks. *Id.* And new employees are subject to a ninety day probation period. Aceituno Depo. at 11:2-5. During the ninety-day probation period, evaluations of new employees occur at 30, 60 and 80-day intervals. Grant Decl.(Third Correction to Oath), Exh. 6. Grant

---

[2]     Pursuant to a motion to dismiss, the court dismissed all of plaintiff's claims related to her employment at the Saratoga Post Office. *See* Order on Motion to Dismiss dated October 24, 2006. (Docket No. 42.).

[3]     Defendant Potter alleges that claim for retaliation is not ripe for adjudication as plaintiff Grant had not alleged this claim in her original October 1998 EEO Request. *See* Claire Cormier Declaration, ¶ 4, Exh. 3. Notwithstanding the above, defendant Potter argues that plaintiff has not proffered any evidence whatsoever to support such claim.

[4]     On July 31, 2008, plaintiff filed at least two (of her own) declarations with exhibits that do not match from declaration to declaration. For example, one of the declarations is titled, Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment (Third Correction to Oath). And another declaration filed on the same day is titled, Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment (3rd Correction to Oath). To distinguish between the two declarations for purposes of this motion, references will be made to the "Third" and "3rd."

[5]     Additionally, the information is contained on hiring worksheets that rank applicants on the basis of their test scores. Supp. Faupel Decl., ¶ 3. "Selections from hiring worksheets are hiring decisions, not training decisions." *Id.*

Decl.(3rd Correction to Oath), Exh. 29.

In or around 1994, plaintiff Grant completed a postal service examination and was placed on a register. Cormier Decl., ¶ 3, Exh A. Grant Depo. at 15:5-16. On March 30, 1998, the post office hired plaintiff Grant as a temporary rural carrier. In or around May 13, 1998, she received two "call in" notices from the post office, one notice related to a position for a rural carrier associate and another notice related to a position for distribution/window clerk. Cormier Decl., ¶ 3, Exh. A. Grant Depo. 16:15-22, 22:17-25, 23:1-25, 30:4-25. After meeting with David Chirayunon, acting Postmaster General for the Los Gatos Post Office, plaintiff Grant opted for the position of Part-Time Flexible (PTF) distribution/window clerk which she assumed on July 18, 1998. Declaration of David Chirayunon ("Chirayunon Decl."), ¶4. Cormier Decl., ¶ 3, Exh. A. Grant Depo. at 24:1.

Generally, a distribution/window clerk commences employment with scheme training to become a distribution clerk. Faupel Decl., ¶ 5. Scheme training involves learning how to separate mail within a given zip code among different delivery routes. *Id.* It may last as long as the entire ninety-day probation period. *Id.* And it would be very unusual for a distribution/window clerk to undertake both scheme training and window training at the same time and during the ninety-day probation period.[6] *Id.* Distribution/window clerks also handle numerous clerical tasks, including sorting the mail into post office boxes, doing business reply mail, completing notices for certified mail and unclaimed items, handling parcels, distributing tubs and bundles of mail to carrier cases, stocking the post office lobby with forms and retail products and performing necessary window duties for some of the other clerks. The distribution/window clerk position may be designated as either a career or a temporary position. Aceituno Depo. at 24:16-20.

Shortly following the meeting between plaintiff Grant and Mr. Chirayunon regarding the "call in" notices she had received for the two positions discussed above, Mr. Chirayunon posted a notice at the post office advising any employees interested in window training to notify him. Cormier Decl., ¶ 3, Exh.A. Grant Depo. at 25:3-22. Because she had recently met with Mr.

---

[6] Even with a position described as broadly as distribution/window clerk, the postmaster has discretion to limit training of the clerk to either distribution or window training, and not necessarily both. Supp. Faupel Decl., ¶ 4. "For example, I currently have six Part Time Flexible Clerks at the Los Gatos Post Office. Two have never been trained for distribution, one has never been trained for windows and three have been trained for both duties." *Id.*

Chirayunon, plaintiff Grant did not think she had to inform him again of her specific interest in window training. Additionally, plaintiff Grant contends that based on representations made by her supervisor and a personnel clerk that she would receive window training, she did not follow up with Mr. Chirayunon. Plaintiff Grant later admitted however, that neither her supervisor nor the personnel clerk had authority to make such representations to her.

In or around July 1998, Mr. Chirayunon sent two male employees named Alex Villasenor and Jose Manzano, both of whom were younger than plaintiff Grant, to window training. EEO Hearing, David Chirayunon Testimony ("Chirayunon Testimony") at 392:3-15. Grant Decl.(3rd Correction to Oath), Exhs. 19-20. Chirayunon Decl., ¶ 4. Alex Villasenor was born in 1963 and Jose Manzano was born in 1966. Grant Decl.(3rd Correction to Oath), Exh. 30. They began window training on July 20, 1998. Grant Decl.(3rd Correction to Oath), Exh. 30. Mr. Villasenor and Mr. Manzano performed well during training. However, they failed the written examination at the conclusion of window training due to language barriers. Faupel Testimony at 290:13-23. English was a second language for them both. *Id.*

Kathie Faupel who had been on a personal leave of absence then returned as postmaster of the Los Gatos Post Office in late August. Grant Decl.(3rd Correction to Oath), Exh. 2. As a result, Mr. Chirayunon was no longer involved in any further personnel decisions related to who was sent for window training at the Los Gatos Post Office. Chirayunon Testimony at 392:3-19. Chirayunon Decl., ¶6. Ms. Faupel sent Mr. Villasenor and Mr. Manzano for window training a second time based on reports of their outstanding performances during window training and based on recommendations from prior supervisors. Faupel Testimony. at 289:21-25; 290:1-9. Grant Decl.(3rd Correction to Oath), Exh. 2. Faupel Decl., ¶7. In or around the same time, Ms. Faupel also sent Amy Yang for window training. Grant Decl.(3rd Correction to Oath), Exh. 27. Faupel Decl., ¶8. She was also younger than plaintiff Grant. Ms. Yang was born in 1958. Grant Decl. (3rd Correction to Oath), Exh. 30.

Ms. Faupel explains that window clerks are among the most important positions available in the post office. Faupel Testimony at 292:5-20. Faupel Decl., ¶6. Window clerks are representative of the post office to the public-at-large and window clerks need to be able to draw on prior postal

experience to respond to the public on a wide array of inquiries. *Id.* Generally, the best and most experienced postal employees are selected for window training. *Id.* Selection is not based solely on seniority and new employees are almost never sent for window training. *Id.* Rather, selection for window training depends on experience and the ability to interact with the public. *Id.*

The three employees sent for window training had significant prior experience at the post office and had been highly recommended by past supervisors. Also, Ms. Faupel was confident that each of their personalities made them well-suited to be window clerks. First, Mr. Villasenor and Mr. Manzano had prior experience working in the postal service. Mr. Manzano had been employed at the San Jose Post Office from June 1991 through April 1998 in a transitional employment appointment.[7] Grant Decl.(3rd Correction to Oath), Exh. 30. He became employed at the Los Gatos Post Office on April 11, 1998. *Id.* Mr. Villasenor had been employed at the San Jose Post Office from August 1992 through April 1998. *Id.* Previously, he too, had been employed in a transitional employment appointment. Supp. Cormier Decl., ¶ 3, Exh. B. Mr. Villasenor also became employed by the Los Gatos Post Office on April 11, 1998. Faupel Testimony at 292:5-20. Faupel Decl., ¶6. Each had received awards at the San Jose Post Office and their supervisor had contacted Ms. Faupel to recommend them for positions as window clerks at the Los Gatos Post Office. Second, both had worked as distribution/window clerks since April 11, 1998 (and were therefore more senior to plaintiff Grant when they were sent for window training). Finally, Mr. Villasenor and Mr. Manzano were approved for window training before plaintiff Grant became a distribution/window clerk and began training two days after she assumed that position. Unlike plaintiff Grant, neither of these employees was on a ninety-day probation period.[8] Grant Decl.(3rd Correction to Oath), Exh. 30.

Ms. Yang had been a city carrier with the Campbell Post Office from January 1989 through

---

[7] At the hearing, it was explained by Assistant United States Attorney Cormier that there are at least three categories of employment at the post office: (1) temporary/casual employees; (2) transitional employees; and (3) career employees. A transitional employee is employed for a 360 day period and may undergo ninety-day probation during that period of employment.

[8] Ms. Yang was a career employee and therefore, not subject to a ninety-day probation period when she came to the Los Gatos Post Office. Carol A. Croteau Depostion ("Croteau Depo."), ¶ 3, Exh. B. Messrs. Villasenor and Manzano completed their ninety-day probation while they were transitional employees. *Id.*

1    October 1995 before she was hired as a clerk with the Los Gatos Post Office on September 12, 1998.
2    Grant Decl.(3rd Correction to Oath), Exh. 30.  Ms. Faupel had supervised Ms. Yang when she was
3    at the Campbell Post Office and knew her to be an excellent employee.  Ms. Yang was approved for
4    window training on September 23, 1998.  Also, Ms. Yang was not subject to a ninety-day probation
5    period.

6    After their second unsuccessful attempt to pass window training, Mr. Villasenor and Mr.
7    Manzano were reassigned to other clerk duties.  Faupel Testimony at 291:1-5.  Ms. Yang
8    successfully completed the window training and has since become the Postmaster of the Redwood
9    Estates Post Office.  Faupel Decl., ¶ 8.

10   Mr. Chirayunon and Ms. Faupel assert that the selection of Mr. Villasenor, Mr. Manzano and
11   Ms. Yang for window training did not relate to a gender or age preference.  Faupel Decl., ¶ 10.
12   Chirayunon Decl., ¶ 5.  Rather the decisions were based on the employees' past experiences and
13   their recommendations.  Faupel Decl., ¶¶ 7-8.  Indeed, Ms. Faupel informed plaintiff that she sent
14   people with more experience instead of someone who had just been hired at the post office.  Cormier
15   Decl., ¶ 3, Exh. A.  Grant Depo 38:16-19.

16   Although her gender and age were never specifically mentioned as issues, plaintiff Grant had
17   the "impression" that Mr. Villasenor and Mr. Manzano were selected for window training based on a
18   preference for their gender and Ms. Yang was selected based on a preference for her age.  Cormier
19   Decl., ¶ 3, Exh. A.  Grant Depo. 53:7-12, 54:6-13, 56:8-12, 59:7-12.  Finally, plaintiff Grant admits
20   that she never experienced any animus as a result of her prior complaints.  Cormier Decl., ¶ 3, Exh.
21   A.  Grant Depo. 119:5-121.

22   **B.    Termination of Employment**

23   The post office may terminate employees with unsatisfactory performance during the ninety-
24   day probation period.  Grant Decl.(3rd Correction to Oath), Exh. 28.  Faupel Decl., ¶ 12.  A
25   termination decision may be made prior to completion of the entire ninety-day probation period.
26   Faupel Decl., ¶ 12.  Otherwise, employees may stay at the post office for decades after the probation
27   period has ended.  Faupel Decl., ¶ 12.  Employees are rated in six categories and an "unacceptable"
28   rating in any one category may justify termination of a new employee during the probation period.

1 Faupel Testimony at 328:8-14.  Faupel Decl., ¶ 11.

2 On October 6, 1998, plaintiff Grant was terminated from the Los Gatos Post Office.  Her
3 termination occurred during the ninety-day probation period of employment and was due to
4 unsatisfactory performance.  At the thirty-day evaluation period, plaintiff was rated as
5 "unacceptable" in three out of six categories, including work quantity, work quality and
6 dependability.  Chirayunon Testimony at 401:9-20.  Chirayunon Decl., ¶ 6, Exh. A.  At the sixty-day
7 evaluation period, plaintiff was rated as "unacceptable" in one out of six categories, specifically
8 work quantity and was "not observed" in the category of work quality.  Faupel Decl., ¶ 11.  Ms
9 Faupel and a supervisor found plaintiff's work unsatisfactory, in part, due to $900 in accounting
10 errors which related to the processing of business reply accounts.  Faupel Testimony at 305:12-23.
11 Grant Decl., Exh. 2.  Faupel Decl., ¶ 11.  Because of plaintiff's accounting errors, Ms. Faupel had
12 been required to spend extensive time reviewing the financial records so that the Los Gatos Post
13 Office would avoid the financial loss.  *Id.*

14 Ms. Faupel states that the decision to terminate plaintiff did not relate to her gender or age.
15 Indeed, Ms. Faupel herself is only seven years younger than plaintiff.  Faupel Decl., ¶ 4.  The
16 accounting errors however, did factor into her decision to later terminate plaintiff from employment.
17 Faupel Decl., ¶ 11.

18 **C.     Alleged Breach of the Settlement Agreement**

19 Following plaintiff's complaints to the EEO that the denial of window training and her
20 termination from the post office were discriminatory, plaintiff and Ms. Faupel attended a redress
21 mediation on December 8, 1998.  Faupel Decl., ¶ 14.  Cormier Decl., ¶ 3, Exh. A.  Grant Depo 72:3-
22 24.  At the mediation, the parties reached a tentative settlement that involved rehiring plaintiff as a
23 distribution/window clerk, providing her with additional scheme training and a new ninety-day
24 probation period.  Faupel Testimony at 321:6-18.  Grant Decl.(3rd Correction to Oath), Exh. 2.
25 Faupel Decl., ¶ 14. Cormier Decl., ¶ 3, Exh. A. Grant Depo. at 73:1-12.  Plaintiff Grant's prior
26 evaluations from the post office would not be considered for purposes of evaluating her during the
27 new ninety-day probation period.  *Id.*  However, the terms of the tentative settlement did not provide
28 for window training.  Cormier Decl., ¶ 3, Exh. A.  Grant Depo. at 73:6-8.  Before finalizing the

settlement agreement, Ms. Faupel was to notify plaintiff Grant in or around two weeks whether she would be allowed to reappoint plaintiff to the post office. Cormier Decl., ¶ 3, Exh. A. Grant Depo. at 74:1-9.

After the parties had reached a tentative settlement agreement, Ms. Faupel spoke with someone in Labor Relations who informed her that she did not have the authority to offer a new ninety-day probation period and doing so would violate a collective bargaining agreement. Faupel Decl., ¶ 15. Moreover, it was explained that the practice would set bad precedent. *Id.* Thereafter, Ms. Faupel spoke with Paul Woods, an EEO Dispute Resolution Manager, who confirmed that, in fact, she did have authority to confer an employee with a new ninety-day probation period. Faupel Testimony. at 311:6-15. Faupel Decl., ¶ 15. Five weeks after the parties had reached the tentative settlement agreement, Ms. Faupel sought to contact plaintiff Grant to confirm that the terms of the tentative settlement agreement had been finalized. Faupel Decl., ¶ 16. She left a telephone message for plaintiff Grant and sent a letter dated January 15, 1999 stating in pertinent part:

> Please accept my apologies for the length of time it has taken to reach this settlement. I encountered a few unexpected obstacles, which made this process take longer than I anticipated.

*Id.* Faupel Testimony. at 312:1-8; 322:10-23. Grant Decl.(3rd Correction to Oath), Exhs. 2, 48 and 50. Faupel Decl., ¶ 16.

Since Ms. Faupel had not finalized the tentative settlement agreement within the agreed-upon two week time period, plaintiff Grant believed that the agreement had been breached. *Id.* Grant Decl.(3rd Correction to Oath), Exh. 50. She did not respond to Ms. Faupel's telephone message or letter whatsoever. Faupel Testimony at 311:24-25; 323:1-10. Grant Decl.(3rd Correction to Oath), Exh. 46. Plaintiff Grant reinstated her EEO complaint. Grant Decl.(Third Correction to Oath), Susan M. Johnson Deposition ("Johnson Depo.") at 22:1-8. Grant Decl.(3rd Correction to Oath), Exhs. 46-47, 49-50. And she did not accept the position at the Los Gatos Post Office providing additional scheme training and a new ninety-day probation period. *Id.* Instead, she sought an EEO hearing. Grant Decl.(Third Correction to Oath), Exh. 10.

In or around May 2003, an EEO hearing was held on plaintiff Grant's complaints. The administrative judge held that plaintiff Grant had failed to demonstrate that age or gender

discrimination had been underlying any of her claims. Declaration of Joan Rubin ("Rubin Decl."), Exh. A. Moreover, the administrative law judge found no basis for, or evidence of, retaliation. *Id.*

## DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2. The Age Discrimination in Employment Act (ADEA) states that all personnel decisions affecting federal employees who are at least forty (40) years of age shall be made free from any discrimination based on age. 29 U.S.C. §633a. Additionally, it is unlawful for an employer to retaliate against an individual because she has made a charge of discrimination or opposed a discriminatory practice. 42 U.S.C. §2000e-3.

"Under Title VII, a plaintiff alleging disparate treatment must first establish a prima facie case of discrimination." *Chuang v. University of California, Davis, Board of Trustees,* 225 F.3d 1115, 1123-1124 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Id.* After the plaintiff has made that showing, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action." *Id.* "If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Pretext may be shown "either (1) directly by persuading the court that a discriminatory reason more likely motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. at 256.

The court noted that "[u]nder the *McDonnell Douglas* framework, '[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal

and does not even need to rise to the level of a preponderance of the evidence.'" *Id. See also, O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308 (1996) (Title VII model of proof may apply to ADEA cases); *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406 (9th Cir. 1996) (prima facie case for claims arising under the ADEA can be "based either on factors such as those set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) or by more direct evidence of discriminatory intent." (citing *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)).  Additionally, no individual shall be subject to retaliation for opposing any practice made unlawful by those statutes, or for participating in any stage of administrative or judicial proceedings under those statutes.  29 CFR § 1614.101(b).  *See also, Cohen v. Fred Meyer, Inc.,* 686 F2d 793 (9th Cir. 1982) (Title VII model of proof applies to claims of retaliation).

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct 2548 (1986).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986) (emphasis in original).  The court must draw all reasonable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588 (1986).  However, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 588.

**A.     Window Training**

Plaintiff first alleges that three people younger than she, two of whom were male, obtained window training before she did.

Of the three employees selected for window training, all were younger than she, and two were male.  Plaintiff Grant was born in 1939.  Mr. Villasenor was born in 1963 and Mr. Manzano

1  was born in 1966. Ms. Yang was born in 1958. Plaintiff Grant is twenty-seven years older than Mr.
2  Manzano and twenty-four years older than Mr. Villasenor. And she is nineteen years older than Ms.
3  Yang. As such, plaintiff has established she belongs to a protected class.
4      Here, plaintiff has not shown that she was qualified for the position. She was a new
5  employee that had been hired by the post office as a distribution/window clerk on July 18, 1998.
6  She commenced scheme training which is separate from window training. Pursuant to post office
7  policy, plaintiff was placed on a ninety-day probation period. Faupel Testimony, 297:17-22. Ms.
8  Faupel explains that first, it is unusual for a new employee to be given window training and second,
9  that it would have been unusual for plaintiff to undertake scheme training and window training as
10 scheme training alone, often lasts for the entire ninety-day probation period. Faupel Testimony,
11 291:6-19, 22-25; 292:1-20. Faupel Decl., ¶ 5. Indeed, only one of her other employees named Rico
12 Sico has ever been trained in both window work and distribution work. Faupel Testimony, 291: 14-
13 19. He was sent for window training after he had successfully completed his ninety-day probation
14 period and had completed scheme training. Supp. Faupel Decl., ¶ 5. Moreover, Ms. Faupel states
15 that she often likes to know that an employee has successfully completed scheme training before
16 undergoing window training. Faupel Testimony, 298: 20-25; 299:1-7.
17     Mr. Chirayunon, then the acting Postmaster, selected Mr. Villasenor and Mr. Manzano for
18 window training on July 6, 1998. Grant Decl. (3rd Correction to Oath), Exhs. 19-20. Chirayunon
19 Decl., ¶ 4. They were sent for window training on July 20, 1998. *Id.* Both failed the examination
20 at the conclusion of their training due to language barriers. Grant Decl.(3rd Correction to Oath),
21 Exh. 30. English was a second language for them both. Faupel Testimony, 290:13-23.
22     When Ms. Faupel returned from a personal leave of absence, she decided to send Mr.
23 Villasenor and Mr. Manzano for window training a second time. Faupel Testimony, 290:1-3.
24 Because Mr. Chirayunon had been substituting for Ms. Faupel, he was no longer involved in
25 determining who was sent for further window training. Chirayunon Decl., ¶ 6. Mr. Villasenor and
26 Mr. Manzano were sent for window training a second time on September 4, 1998. By this time, Ms.
27 Faupel was well-aware of plaintiff's unsatisfactory performance as a window/distribution clerk from
28 her thirty-day evaluation as well as from her own knowledge and observations. Faupel Decl., ¶ 11.

Mr. Villasenor, Mr. Manzano and Ms. Yang all had been previously employed at the post office before being transferred to the Los Gatos Post Office. Each had had at least six years of prior experience and had received high recommendations from past supervisors. Faupel Decl., ¶¶ 7-9. Additionally, Ms. Faupel had personally supervised Ms. Yang when she had been employed at the Campbell Post Office. Ms. Faupel considered her an excellent employee. None of the three employees chosen was subject to a ninety-day probation period. The court finds that plaintiff has not shown that she was qualified for window training or that similarly situated individuals outside the protected class were treated more favorably. Therefore, the court need not consider the remaining elements for finding disparate treatment under Title VII. Plaintiff has failed to establish "a prima facie inference of disparate treatment through direct or circumstantial evidence of treatment." *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996). Accordingly, defendant's motion for summary judgment is granted as to this claim of discrimination.

**B.     Termination of Employment**

Plaintiff next alleges discrimination based on the termination of her employment at the Los Gatos Post Office.

Plaintiff has established that she belongs to a protected class. However, as discussed above, plaintiff fails to establish that she was otherwise qualified for the position. She was hired on July 18, 1998 as a distribution/window clerk and, as is customary with new employees at the post office, was subject to a ninety-day probation period which meant that her probation period would conclude in or around October 18, 1998. Plaintiff was terminated on October 6, 1998.

Ms. Faupel states that new employees may be terminated at any time during the ninety-day probation period. Faupel Decl., ¶ 12. There is no requirement that an employee be allowed to complete the probation period. *Id.* New employees are evaluated at 30, 60 and 80-day intervals. Aceituno Decl., Exh. 6. Grant Decl.(3rd Correction to Oath), Exh. 29. An "unacceptable" rating in any one of six categories of an evaluation would justify the termination of employment. Faupel Decl., ¶ 11. The post office considers it especially important to terminate unsatisfactory employees before the probation period ends because otherwise, an employee could remain with the post office for decades. Faupel Decl., ¶ 12.

At the thirty-day interval, plaintiff was rated as "unacceptable in three out of six categories, including work quantity, work quality and dependability. Grant Decl., Chirayunon Testimony, 401: 9-20. Chirayunon Decl., ¶ 6. She was having problems with efficiency and business reply mail. Declaration of Joan Robin, ("Robin Decl.") Exh. A, page 12. At the sixty-day interval, plaintiff was rated as "unacceptable" in one out of six categories, specifically work quantity. She was "not observed" in the category of work quality. Plaintiff was having difficulty casing the post office boxes. *Id.* at page 13. Ms. Faupel states that a category as significant as work quantity alone would have justified terminating plaintiff Grant. Additionally, Ms. Faupel states that on one occasion, plaintiff made accounting errors totaling $900 for business reply accounts. *Id.* at page 14. Faupel Testimony, 305:13-23. The errors required Ms. Faupel to spend extensive time reviewing records to correct the accounting errors that would otherwise would have required the Los Gatos Post Office to post a financial loss. *Id.* On October 6, 1998, plaintiff was terminated by the acting supervisor, Jas Azzimi. *Id.* In light of the above and despite viewing the evidence in her favor, plaintiff has not established that she was qualified for the position. Accordingly, defendant's motion for summary judgment is granted as to this claim of discrimination.

### C. Alleged Breach of Contract

Plaintiff also alleges that the post office discriminated against her in breaching a settlement agreement that had been reached in an effort to resolve the various complaints she had lodged regarding the failure to select her for window training and the improper termination of her employment.

Even assuming that plaintiff Grant has established a prima facie case for discrimination, she cannot show that the articulated reason set forth by the post office for allegedly breaching the settlement agreement is pretextual or unworthy of credence and that the actual motive was discriminatory. Ms. Faupel explains that after the redress mediation held on December 8, 1998, she undertook significant efforts to finalize the terms of the settlement agreement. Faupel Decl., ¶ 17. Specifically, she contacted someone in Labor Relations who informed her that she did not have authority to offer an employee a second ninety-day probation period and doing so would violate a collective bargaining agreement. Faupel Decl., ¶ 15. Additionally, it was explained to Ms. Faupel

that providing an additional ninety-day probation period to an employee would set bad precedent. *Id.* Later, after Ms. Faupel contacted Paul Woods, an EEO Dispute Resolution Manager, he informed her that indeed, she did have authority to reappoint plaintiff and to provide her with a second ninety-day probation period. *Id.* Faupel Testimony, 311:6-15. However, instead of the agreed-upon two weeks for Ms. Faupel to finalize the settlement agreement and report back to plaintiff, it took five weeks. Faupel Decl., ¶ 15.

On January 15, 1999, Ms. Faupel sought to contact plaintiff. She left a telephone message offering plaintiff a start date of January 16 or January 30 and she sent her a letter. Grant Decl.(rd Correction to Oath), Exh. 42. The letter stated in pertinent part:

> Please accept my apologies for the length of time it has taken to reach this settlement. I encountered a few unexpected obstacles, which made this process longer than I anticipated.

Faupel Testimony, 312:1-8. Plaintiff never responded to the telephone message or the letter. Ms. Faupel also contacted the union representative Ron Staden on at least two occasions to update him regarding the obstacles she was encountering in finalizing the settlement agreement. Based on the extended delay in confirming the terms of the settlement agreement, plaintiff believed that the agreement had been breached. In Exhibit 47 of plaintiff's declaration, she states in a letter addressed to the EEO Complaints Processing Center that Paul Woods confirmed to plaintiff that the settlement agreement had been breached on January 5, 1999. However, even assuming that the agreement had been breached, plaintiff has not shown that the breach occurred due to a pretextual reason or that the proffered explanation by Ms. Faupel is unworthy of credence. Grant Decl.(3rd Correction to Oath), Exh. 47. Plaintiff proceeded with her EEO complaint and a hearing before an administrative judge was later held. Grant Decl. (Third Correction to Oath), Exh. 10.

The chronology of events underlying the redress mediation and efforts by Ms. Faupel to finalize the settlement agreement are largely undisputed.[9] No genuine issue of material fact exists.

---

[9] Plaintiff Grant does not dispute the material facts of the chronology of events set forth above except to proffer hearsay evidence that Ms. Faupel may have been motivated to finalize the settlement agreement as a result of "yelling" by Mr. Woods that was overheard by his colleague. *See* August 19, 2008 hearing on defendant Potter's motion for summary judgment. Even assuming that "yelling" may have prompted Ms. Faupel to finalize the settlement agreement (which would be hearsay), plaintiff has not established that the alleged breach of the settlement agreement was motivated by discrimination.

Based on the stated efforts by Ms. Faupel to finalize the settlement agreement, the court finds that plaintiff has not shown, directly or indirectly, that the articulated reason set forth by Ms. Faupel was pretextual or unworthy of credence or that her delay in finalizing the settlement agreement was motivated by discrimination. In other words, plaintiff has not shown that Ms. Faupel's prolonged efforts to finalize the settlement agreement (which may have, in fact, breached the settlement agreement) were based on a discriminatory motive. As such, plaintiff has not met her burden even viewing the evidence most favorably to plaintiff. Accordingly, defendant's motion for summary judgment as to this claim is granted as to this claim of discrimination.

## CONCLUSION

For the foregoing reasons, defendant Potter's motion for summary judgment is granted as to all claims. Judgement shall be entered for the defendant.

IT IS SO ORDERED.

Dated:   *August 29, 2008*

_____
PATRICIA V. TRUMBULL
United States Magistrate Judge

1  Copies of this order were mailed on August 29, 2008 to the following:

2  Esther B. Grant
   33 Clifton Avenue
3  Los Gatos, CA 95030-6805

4

5                                                    _____EHP_____
                                                     Chambers of U.S. Magistrate Judge
6                                                          Patricia V. Trumbull

ORDER, *page 16*